RECEIVED IN
COURT OF CRIMINAL APPEALS

June 11, 2015

ABEL ACOSTA, CLERK

NO. 24442-A

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

DANNY CALAMACO,
PETITIONER

V.

THE STATE OF TEXAS,
RESPONDENT

---

PETITION FOR DISCRETIONARY REVIEW
NO. 11-13-00066-CR

COURT OF APPEALS

FOR THE 11TH DISTRICT OF TEXAS

AT EASTLAND

---

On appeal from Cause Number 24442-A
In the 42nd District Court of Taylor County, Texas

Honorable John W. Weeks, Judge Presiding

_____

Paul W. Hanneman
Attorney for Petitioner
SBN: 08925500
1305 Lamar Street
Sweetwater, Texas 79556
325-235-4777
325-235-4777 – Fax
pwhlawoffice@gmail.com

James Eidson
District Attorney Taylor County
300 Oak Street
Abilene, Texas 79602
325-674-1261
325-674-1306 - Fax

***ORAL ARGUMENT REQUESTED***

1

# TABLE OF CONTENTS

**PAGE**

INDEX OF AUTHORITIES …………………………………………….. 3

STATEMENT REGARDING ORAL ARGUMENT ………………….. 4

STATEMENT OF THE CASE ……………………………………… 4

STATEMENT OF PROCEDURAL HISTORY ……………………….. 5

GROUNDS FOR REVIEW ……………………………………………… **5,6**

STATEMENT OF FACTS …………………………………………… **7**

ARGUMENTS AND AUTHORITIES ……………………………… **9,14,16**

PRAYER FOR RELIEF ………………………………………………… **23**

CERTIFICATE OF SERVICE ...……………………………………….. **24**

APPENDIX ……....……………………………………………………….. **26**

# INDEX OF AUTHORITIES

## CASES

*Davis v. State of Alaska; 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (Feb. 27, 1974 Supreme Court of United States)* …...............................**19**

*United States v. Gonzales-Lopez; 548 U.S. 140, 126 S. Ct. 2557, 165 L.Ed.2d 409 (June 26, 2006 Supreme Court of United States)*………... **22**

*Faretta v. State of California; 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (June 30, 1975)*…………………………………… **9,10,12,14,20**

*Gobert v. Court of Criminal Appeals of Texas; 717 S.W.2d 21 (Tex.Crim.App. 1986)*………………………………………… **20,21**

*Davis v. State of Texas; 228 S.W.3d 917 (Tex.Crim.App.2007)*............... **22**

*Williams v. State of Texas; 252 S.W.3d 353 (Tex.Crim.App.2008)*..**10,14,22**

*Johnson v. United States; 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (May 12, 1997 Supreme Court of United State)*………………………... **19,13**

*Cronic v. United States; 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (Supreme Court of the United States May 1984)*……………………..…. **19**

*Medley v. The State of Texas; 47 S.W.3d 17 (Tex.App. – Amarillo 2000)*.**19**

*Arizona v. Fulminante;499 U.S. 279, 111 S.Ct.1246, 113 L.Ed.2d 302.***19,22**

*Adams v. United States ex rel. McCann; 317 U.S. at 279, 63 S.Ct., at 242.***9**

*Powell v. State; 632 S.W.2d 354, 355 (Tex. Crim. App 1582)* ……….. **10,20**

*Lewis v. State; 2014 WL 491746 (Tex. App. – Fort Worth Feb. 6, 2014) (mem. Op., not designated for publication), pet. granted, (Tex. Crim App. Sept. 17, 2014) (No. PD-0307-14)*…………………………..……. **16**

*Calamaco v. State*, No. 11-13-00066-CR (Tex. App. Eastland 2015)*………………………………………… **5,6,8,13,16,18,21**

*Johnson v. Zerbst, 304 U.S. at 464-465. 58 S.Ct., at 1023*…………..…… **9**

*Vasquez v. Hillery, 474 U.S. 254 106 S.Ct. 617, 818 L.Ed.2d 598 (1986).***19**

*Mckaskle v. Wiggins, 465 U.S. 168, 183-84, 104 S.Ct. 944, 953-54, 79 L.Ed.2d 122 (1984)*……………………………………………….... **19**

*Heredia v. State, 528 S.W.2d 847 (Tex. Crim. App. 1975)*…………… **20,21**

*Sullivan v. Louisiana, 508 U.S. 275, 282*………………………………… **22**

## RULES AND STATUTORY PROVISIONS

*TEX.R.App.Pro.66, et seq.* …………………………………………... **4**

*TEX.CODE.CRIM.PROC.Art 1.051* ………………………………………… **4**

**STATEMENT REGARDING ORAL ARGUMENT**

In the event this petition is granted, the Petitioner requests oral argument. Argument would assist the Court because resolution of the grounds for review depends upon a detailed exploration of the facts of the case. Further, oral argument would provide this Court with an opportunity to question the parties regarding their positions.

Appellant has raised important questions of first impression in this Court and believes that oral argument would help clarify the issues presented in his petition for discretionary review. Therefore, he respectfully requests oral argument.

**TO THE HONORABLE JUSTICES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW, DANNY CALAMACO, Appellant in this cause, by and through his attorney of record, Paul W. Hanneman, and, pursuant to the provisions of *TEX.R.App.Pro.66, et seq.*, moves this Court to grant discretionary review, and in support will show as follows.

**STATEMENT OF THE CASE**

Appellant was indicted in Cause No. 24,442-A for Murder, with a deadly weapon allegation and enhanced in a second paragraph with three prior felony convictions (CR, Vol. 1, 7; 8). On January 24, 2013 the jury found Appellant guilty (CR, Vol. 1, p. 177) and the Court assessed punishment at Life confinement in the State penitentiary (CR Vol. 1, p 184; RR vol. 11, p. 9). Appellant gave timely notice of appeal on February 22, 2013 (CR Vol. 1, p. 194) and also filed a Motion for New Trial (CR Vol. 1, p. 189-193) which, after a hearing was overruled on *April 05, 2013* (CR Vol. 1, p. 204; RR Vol. 12, p. 45).

## STATEMENT OF PROCEDURAL HISTORY

The conviction was affirmed in an opinion designated for publication by the 11th District Court of Appeal. <u>*Calamaco v. State*</u>, No. 11-13-00066-CR (Tex. App. Eastland 2015), delivered April 09, 2015. Appellant requested an extension of time to file a PDR, which was granted. This petition is due on June 10, 2015, and therefore, it is timely filed.

## GROUND FOR REVIEW ONE

The Court of Appeals erred when it found that Appellant was properly admonished regarding his waiver of counsel and granted Appellant's waiver of counsel. RR Vol. 7, pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

## GROUND FOR REVIEW TWO

The Court of Appeals erred when it found that Appellant entered a knowing, intelligent waiver of counsel. RR Vol. 7, pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

## GROUND FOR REVIEW THREE

The Court of Appeals erred when, although it correctly found that the trial court erred by depriving Appellant of counsel during voir dire, it then incorrectly found the error to be non-structural error and further erred by applying a harm analysis to the error. RR Vol. 7, pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 9.

## STATEMENT OF FACTS

Prior to Voir Dire in his trial on the charge of Murder in this cause, immediately after his plea of "Not Guilty" was entered, Appellant, who at the time was represented by court-appointed counsel, Monte Sherrod, requested that he be allowed to represent himself. (RR, Vol. 7, p. 8). The Trial Judge examined Appellant regarding his qualifications. The Court informed Appellant that if Appellant waived his right to counsel and represent himself instead, that Appellant could change his mind. The Court told Appellant "You understand that you can change your mind?" (RR, Vol. 7, p. 13). The trial court judge went further to say; "I mean, if you were to start to represent yourself you could say, well, this is going not like I thought it would. It's harder than I thought it would be. I want to change my mind and tell the Judge and let Mr. Sherrod start representing me. You understand that?" (RR, Vol. 7, P. 13).

The trial court judge further admonished Appellant, before the waiver:

"Now listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay? Because you're going to be missing a lot of things. And you've never done a voir dire and you don't even know what to say to them." (RR, Vol. 7, p. 16)

7

The Trial Judge granted Appellant's motion to let Appellant represent himself and brought the jury in. (RR, Vol. 7, p. 18). During his presentation of the defense's portion of voir dire, Appellant did in fact change his mind and asked the Court to "remove my motion to represent myself and ask for Mr. Sherrod's representation." (RR, Vol. 7, p. 60). Appellant stated that he wanted his attorney to do the voir dire. (RR, Vol. 7, p. 60). The Trial Judge refused Appellant's request, and did not let Mr. Sherrod start representing Appellant but instead required Appellant to complete voir dire before the Court would allow Appellant to have counsel represent him before the jury. Mr. Sherrod did not take part in voir dire due to the Trial Judge's failure to rule consistently with the admonishment he gave Appellant except that he was present on "standby".

## GROUND FOR REVIEW ONE RESTATED

The Court of Appeals Erred when it found that Appellant was properly admonished regarding his waiver of counsel and granted Appellant's waiver of counsel. RR Vol. 7, pp. 8-16, 60. *Calamaco v. State*, No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

8

**ARGUMENT**

Review of Ground For Review One is proper because the Court of Appeals decision has decided an important question of state and federal law that has not been, but should be settled by the Court of Criminal Appeals.

Review of Ground For Review One is proper because the Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

The Court of Appeals found that the trial court adequately admonished the Appellant regarding the possible consequences of the waver of counsel so that Appellant could enter a knowing and intelligent waiver. In *Faretta v. California* the U.S. Supreme Court ruled that to waive the right to counsel the accused must "knowingly and intelligently" forgo that right, citing, *Johnson v. Zerbst, 304 U.S. at 464-465. 58 S.Ct., at 1023.* To that end, the trial court must make the defendant "aware of the dangers and disadvantages of self-representation, so that he knows what he is doing and his choice is made with eyes open", citing *Adams v. United States ex rel. McCann, 317 U.S. at 279, 63 S.Ct., at 242. Faretta v.*

9

*California* 422 U.S. 806 at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562. *Faretta* established that part of making the record establish that the defendant knows what he is doing and his choice is made with eyes open is admonishing the defendant that he would be required to follow all the "ground rules" of trial procedure.

The Texas Code of Criminal Procedure provides, in part, that in such circumstances the trial court shall "advise" the defendant of the "dangers and disadvantages of self representation". Tex. Code Crim. Proc. Art. 1.051(g).

When the record does not affirmatively show that the defendant was sufficiently admonished before defendant's waiver of counsel is allowed as is required by *Faretta*, it is reversible error not subject to harm analysis. *Williams v. State*, 252 S.W.3d 353, *Powell v. State*, 632 S.W.2d 354, 355 (Tex. Crim. App 1582)

At Appellant's trial the judge advised Appellant, before allowing him to represent himself, that Appellant could change his mind even if he were to start representing himself, that he could tell the judge and "let Mr. Sherrod start representing" Appellant. The Court's advise referred to Appellant changing his mind during the voir dire process when he told Appellant:

"Now listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay? Because you're going to be missing a lot of things. And you've never done a voir dire and you don't even know what to say to them." (RR, Vol. 7, p. 16)

But when, following the procedure the judge outlined, Appellant attempted voir dire on his own and changed his mind, the judge would not let him have his lawyer back to do voir dire. It is clear from the record that Appellant believed that the judge would let Mr. Sherrod finished the voir dire.

"THE DEFENDANT: That's fine. At this time I would like to move the court to remove my motion to represent myself and ask Mr. Sherrod's representation.

"THE COURT: Do you want him to do the voir dire?

"THE DEFENDANT: Yes, sir."

(RR Vol. 7, p. 60)

The judge erroneously told Appellant "I can't" allow Appellant to have his attorney address the jury on voir dire. (RR Vol. 7, p. 60).

It was not until voir dire was completed, that the judge allowed Mr. Sherrod to actively participate in the trial by agreeing to excase some

11

potential jurors, then, a jury was sworn and the court recessed for lunch. When the court re-convened, Appellant once again requested that he be allowed to "withdraw my motion for self-representation". The mixed signals and erroneous instructions to Appellant evidentially confused him about his right. Mr. Sherrod represented Appellant to the conclusion of the trial.

The issue to be before the Court of Criminal Appeals is that when the trial court gives such misleading advise (intentionally or not) does that advise fulfill the requirements of *Faretta*? The Court did not advise or admonish Appellant of the danger and disadvantage that the court could, under some circumstances, deprive Appellant of counsel to prevent the disruption of the orderly progress of the trial, or perhaps; as the State has argued; to disallow hybred representation. The court did not advise or admonish that the Appellant would have to follow the ground rules of procedure but that the judge might make an error that would deprive Appellant of counsel during a critical phase of trial and that the court, in effect did not have to follow the rules of procedure because the judge's error might be deemed to be "harmless."

In short, the trial court told Appellant the law was one thing and then, after being approached by the Assistant District Attorney, the court decided the law was another thing and erroneously deprived Appellant of counsel.

Appellant was led to believe that the law was that he did not "have to suffer" without an attorney, that he could change his mind "…and tell the Judge and let Mr. Sherrod start…" RR Vol. 7, p.13. The Appellate court did not apply the *Faretta* standard that a defendant must be advised or admonished in such a way that if he enters a waiver of counsel so that he does so having been told of the disadvantages and dangers of self-representation and that he make a choice with eyes open.

If *Faretta* is to be modified to allow the trial court to advise a defendant erroneously on the law or to advise a defendant that the law protects the defendant in a certain way and then in the same trial to deprive the same defendant of that protection, then it should be the Court of Criminal Appeals that delineates standards and limitations on this practice to guide the courts and the public in the future.

## GROUND FOR REVIEW TWO

The Eleventh Court of Appeals Erred when it found that Appellant entered a knowing, intelligent waiver of counsel. RR Vol. 7, pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

**ARGUMENT**

Review of Ground For Review Two is proper because the Court of Appeals decision has decided an important question of state and federal law that has not been, but should be settled by the Court of Criminal Appeals.

Review of Ground For Review Two is proper because the Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

In order for Appellant's waiver of counsel which was entered before voir dire commenced at trial herein to have been valid, it must have been given competently, knowingly, intelligently and voluntarily; it is his constitutional right to elect to do so and to represent himself. (U.S. Const., amend. VI; Tex.Const.Art. 1, Sec 10; *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Williams v. State*, 252 S.W.3d 353, 356 (Tex.Crim.App. 2008)

The Appellate Court in this case found that Appellant knowingly and intelligently waived his right to counsel prior to voir dire. However, the record reflects that Appellant could not have given a knowing, intelligent nor voluntary relinquishment of his right to counsel at this critical phase of

14

trial because he was misinstructed by the Trial Court as to what could and would happen and was misinformed as to how the law would eventually be carried out regarding his waiver of right to counsel and further, Appellant relied on that misinformation to his detriment in waiving his right to counsel.

Because the Court undertook to inform Appellant of the law pertinent to his decision to have counsel withdrawn and to represent himself and that information was substantially incorrect and erroneously applied, the Appellant cannot be said to have given knowing, intelligent, and voluntary waiver. A defendant should be able to rely on the Court's advice and here, Appellant did so to his detriment, his eyes closed by the advice of the trial court.

Appellant relied on the trial court's representation that the court would not commit the error of depriving Appellant of Counsel if Appellant waived his right to counsel. The trial court then committed the error, depriving Appellant of counsel during a critical phase of the trial; voir dire. Only if the trial court had advised Appellant that the court could deprive him of counsel regardless of the court's representation that it would not deprive him of counsel and further that, if the court deprived him of counsel, Appellant might have no remedy at law because it might be harmless error and *then* Appellant decided to go ahead and waive the right to counsel could the

waiver have been said to have been entered by Appellate with his eyes open, aware of the dangers and disadvantages, knowing, intelligently and voluntarily. If Texas courts are to modify Faretta and it's progeny, then it should be the Court of Criminal Appeals that delineates these standards and which sets limitations on this practice, resolving any conflicts.

## GROUND FOR REVIEW THREE

The Court of Appeals erred when, although it correctly found that the trial court erred by depriving Appellant of counsel during voir dire, it then incorrectly found the error to be non-structural error and further erred by applying a harm analysis to the error. RR Vol. 7, pp. 8-16, 60. _Calamaco v. State_ No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

## ARGUMENT

Review of Ground For Review Three is proper because this Court has recently granted review of a PDR with a similar issue _Lewis v. State_, _No. 02-12-00246-CR, 2014 WL 491746 (Tex. App. – Fort Worth Feb. 6, 2014) (mem. Op., not designated for publication), pet. granted, (Tex. Crim App. Sept. 17, 2014) (No. PD-0307-14)._ The issue presented in the parties' briefs to the Court of Criminal Appeals in _Lewis_ is whether the proper

standard of review on appeal was *de novo* or abuse of discretion. In <u>Lewis</u> the trial court denied the defendant's request for court appointed counsel to represent him during voir dire and subsequently, throughout trial when he attempted to withdraw his waiver of court appointed counsel.

Review of Ground For Review Three is proper because the Court of Appeals' decision has decided an important question of state and federal law that has not been, but should be settled by the Court of Criminal Appeals.

Review of Ground For Review Three is proper because the Court of Appeals has decided an important question of state and federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States.

Review of Ground For Review Three is also proper because the question of whether a partial denial by the trial judge of counsel for a defendant during voir dire in a criminal trial can ever be "structural error" is a novel question of law which has not been, but should be, decided by the Court of Criminal Appeals.

The 11th Court of Appeals found that the trial court erred when it refused to allow Appellant withdraw his waiver of counsel and allow appointed counsel to complete the defense portion of voir dire. RR Vol. 7,

17

pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, p 7.

The Court of Appeals then ruled:

> "Because Appellant was not totally deprived of counsel during voir dire, we hold that the error was not a structural one but, rather, one subject to a harm analysis." RR Vol. 7, pp. 8-16, 60. *Calamaco v. State* No. 11-13-00066-CR, 11th Court of Appeals April 9, 2015, at page 7.

The Court of Appeals then went on to state:

> "We have not found a case in which a court specifically addresses whether the partial denial of counsel during voir dire is a structural error that is not subject to a harm analysis or is a constitutional error that is subject to a harm analysis."

This is an issue for the Court of Criminal Appeals because the converse is also true: undersigned counsel has not found a case that says partial denial of counsel during voir dire is never a structural error; and in the case of Mr. Calamaco we contend that a thorough review would show that the denial was certainly structural error. There are cases werein partial

18

denial of a constitutional right were found to be structural errors. *Davis v. State of Alaska*; *415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (Feb. 27, 1974 Supreme Court of United States),* (cross-examination limited by trial court) *Vasquez v. Hillery, 474 U.S. 254 106 S.Ct. 617, 818 L.Ed.2d 598 (1986)* (unlawful exclusion of only certain grand jurors based on race). A more extensive briefing may reveal other cases.

The "erroneous denial of counsel bears directly on the framework within which the trial proceeds" *United States v. Gonzales-Lopez; 548 U.S. 140, 126 S. Ct. 2557, 165 L.Ed.2d 409 (June 26, 2006 Supreme Court of United States)*, citing *Fulminante*.

In it's analysis of whether or not the denial of Mr. Calamaco's right to counsel was structural, the Court of Appeals also relied on the fact that the trial court had given Mr. Calamaco a "standby counsel" to support it's ruling. This reasoning conflicts with earlier rulings that "standby counsel" does not equate to counsel for his defense to which a defendant is entitled by the Sixth Amendment", *Medley v. The State of Texas; 47 S.W.3d 17 (2000), Mckaskle v. Wiggins, 465 U.S. 168, 183-84, 104 S.Ct. 944, 953-54, 79 L.Ed.2d 122 (1984).* In it's opinion in *Cronic v. U.S.*, the U.S. Supreme Court stated that "although counsel is available to assist the accused" that there are occasions when a presumption of prejudice is appropriate without

a harm analysis. *Cronic v. United States; 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) Powell v. Alabama 287 U.S. 45, 53, S.Ct 55 77 L.Ed 158 (1932).*

In it's analysis of whether the error was structural error the Appellate Court "jumped the gun" and inquired into whether the Appellant was harmed by the error before fully examining the nature of the violation of the 6th Amendment. The Court of Appeals did not fully analyze whether the error amounted to a structural defect affecting the framework in which trial proceeded, and cut short the examination of the error to which Appellant is entitled *Faretta v. California*, *422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) p. 310*, citing *Gorbert v. State*, *717 S.W.2d 21, 24 (Tex. Crim. App. 1986)*. Instead of fully examining the nature and effect of the error, the Court of Appeals took a shortcut, citing *Gorbert*. In *Gorbert* it is not clear how long the defense attorney was not present during voir dire, but only that his absence was "partial". It is clear, however, that the absence of defense counsel in *Gorbert* was only during part of the State's examination of the panel and not, as it was in Appellant's trial, during the defense examination. *Gorbert* at p. 23. In *Gorbert* the Court of Criminal Appeals relied on *Heredia* which found no deprivation of right to counsel in a trial where defense counsel was absent for only "two or three minutes" of the

State's examination of a potential juror. *Heredia v. State*, 528 S.W.2d 847 (Tex. Crim. App. 1975)

In both *Gorbert* and *Heredia* the Court of Criminal Appeals found there was no deprivation of the right to counsel. In Mr. Calamaco's is distinguished because in this case we come to the Court of Criminal Appeals with a finding from the 11th Court of Appeals that the 42nd District Court committed error by depriving the Appellant of his Right to Counsel in violation of the Sixth Amendment to the United States Constitution. *Calamaco v. State*, No. 11-13-00066-CR (Tex. App. Eastland 2015) p. 7

Calamaco is further distinguished from other partial absence of counsel cases in that Mr. Calamaco's entire voir dire of the jury panel was very, very brief; it is so short that it consumes only about seven pages of the Court Reporter's record. RR Vol. 7, pp. 54-61.

The Court of Appeals' determination that the error was non-structural ignored a standard for distinguishing structural errors from non-structural errors. To apply a harm analysis to a structural  error, the court's have ruled, would be to speculate as to any harm done, and the courts must not engage in such speculation. In cases of non-structural error the effect of the error is quantifiable. The Court of Appeals overlooked that important distinction between structural and non-structural error.

21

The error found by the Court of Appeals of depriving Appellant of counsel affects the framework in which the trial proceeds and is not simply an error in the trial process itself. _Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct.1246, 113 L.Ed.2d 302_. In _United States v. Gonzales-Lopez_ the U.S. Supreme Court, ruling that a Sixth Amendment violation was not subjected to harmless error analysis, said "erroneous deprivation of the right to counsel of choice with consequences that are necessarily unquantifiable and indeterminate unquestionably qualifies as "structural error" _Gonzales-Lopez_, citing _Sullivan v. Louisiana, 508 U.S. 275, 282_.

"It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. … Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." _Gonzales-Lopez_ at 150, se also _Davis v. State of Texas; 228 S.W.3d 917 (Tex.Crim.App.2007), Williams v. State of Texas; 252 S.W.3d 353 (Tex.Crim.App.2008)_

This ground should be more fully briefed so the Court of Appeals can make this decision important to the conduct of trials in the lower courts of Texas.

**PRAYER FOR RELIEF**

*WHEREFORE, PREMISES CONSIDERED,* Appellant respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remanding the cause to the trial court for a new trial.

Appellant respectfully prays that this Court grant review and, after full briefing on the merits, issue an opinion resolving these important issues so that the bench and bar of this state will know how to address similar issues in the future.

Appellant respectfully prays that this Court issue an opinion reversing the Court of Appeals' judgment and remanding this cause to the Court of Appeals for full and complete consideration of the issue of whether the error of denial of counsel found by the Court of Appeals was a structural error.

Respectfully submitted,

_____
Paul W. Hanneman
Attorney for Appellant
1305 Lamar Street
Sweetwater, Texas 79556
State bar No. 00895500
pwhlawoffice@gmail.com
(325) 235-4777

## CERTIFICATE OF SERVICE

I hereby certify, by affixing my signature above, that a true and correct copy of the foregoing Petition for Discretionary Review, was mailed through the U.S. Postal Service to James Edison, Office of the Taylor County District Attorney, 300 Oak Street, Abilene, Texas 79602, and was mailed to Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, by U.S. Postal Service.



**Paul W. Hanneman**
**Attorney At Law**

**1305 Lamar Street**                                          **Telephone: (325) 235-4777**
**Sweetwater, Texas 79556**                                   **Fax:   (325) 235-4777**
**pwhlawoffice@gmail.com**

Certificate of Compliance

I certify that this Petition For Discretionary Review, a computer generated document, and according to the word count function, this document contains a total of 4,719 words, 3,726 words that are contained in the body of the document, (which does not include caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) pursuant Tex.R.App.Pro. 9.4 (i)(1), 9.4 (i)(2)(D), this document is printed in a 14-point font.

Paul W. Hanneman

Opinion filed April 9, 2015



In The

# Eleventh Court of Appeals

No. 11-13-00066-CR

**DANNY CALAMACO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 24442A**

## OPINION

The jury convicted Danny Calamaco of murder. The trial court found two enhancement paragraphs to be true and assessed Appellant's punishment at confinement for life. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). We affirm.

Appellant presents three issues on appeal. In his first issue, Appellant contends that the trial court denied him his right to counsel during voir dire. Appellant asserts in his second issue that he was denied effective assistance of counsel. And, in his third issue, Appellant argues that the trial court denied him

the right to a fair trial, as well as his right to be presumed innocent, when the court compelled him to stand trial before a jury while he was dressed in jail attire.

Although Appellant has not challenged the sufficiency of the evidence, we will briefly outline the evidence presented to the jury. On the date of the murder, the victim, Steven McCain, received several text messages from "Danny D." Apparently, McCain owed Appellant $10 for drugs. McCain's girlfriend, Teresa Ward, was with McCain, and she saw the texts. She testified that the "Danny D" in the texts was Appellant. The text messages were introduced into evidence. In the messages, Appellant told McCain: "It ain't about the bread. It's about principle. You think I'm a ho. You think you can do what you want to me with me, rape me, f--k me." McCain asked Ward if she had any money. She did not give him any money because she knew that he was going to take the money to Appellant, and she did not approve of his use of methamphetamine. McCain told Ward that he had to go "handle his business," and he left in Ward's van.

Anthony Sanchez stopped in front of Appellant's house. Sanchez had stopped so that he could get something out of the trunk of his car. McCain drove up behind him, got out of the van that he was driving, and started walking toward the house. A person who Sanchez believed to be Appellant came out of the house. He saw Appellant and McCain approach each other in the front yard. As they got close to each other, Appellant shot McCain. Sanchez drove away. Sanchez later returned and told police what he had seen. McCain was taken to the hospital, but he died on his way to surgery; the cause of death was a gunshot wound to the chest.

The police searched the area in the front yard where the shooting took place. They found several nine-millimeter shell casings, a lighter, and a ten-dollar bill. Appellant was subsequently arrested, indicted, tried, and convicted for the murder. This appeal follows that conviction.

2

We will first address Appellant's argument that the trial court denied Appellant his right to have counsel during voir dire. Voir dire is a critical stage of a criminal prosecution at which the right to counsel attaches. *Eason v. State*, 563 S.W.2d 945, 947 (Tex. Crim. App. [Panel Op.] 1978). An accused may waive his right to counsel; however, the waiver must be made voluntarily, knowingly, and intelligently. *Webb v. State*, 533 S.W.2d 780, 785 (Tex. Crim. App. 1976). An accused also has an independent right to self-representation. *Faretta v. California*, 422 U.S. 806, 821, 834 (1975); *Webb*, 533 S.W.2d at 783. The right to self-representation does not attach until it has been clearly and unequivocally asserted. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) (citing *Faretta*, 422 U.S. at 835). Once a defendant has invoked his right to self-representation, the court must admonish the defendant as to the "dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Webb*, 533 S.W.2d at 785 (quoting *Faretta*, 422 U.S. at 835) (internal quotation mark omitted).

In advance of trial, the trial court appointed counsel to represent Appellant. However, on the morning of the trial, and before the voir dire examination began, Appellant told the trial court that he was not happy with his lawyer and that he wanted to represent himself. He advised the court that he had made the decision to represent himself four months prior to trial. The trial court questioned Appellant about why he wanted to represent himself; questioned him about his education, work experience, and ability to read and write; and asked whether he was currently taking any medications or had any mental condition. The trial court also admonished Appellant as to the dangers and disadvantages of representing himself. Appellant does not challenge the adequacy of those admonishments.

Although Appellant acknowledges that he waived his right to counsel, he asserts that his waiver was not made knowingly and intelligently. Specifically, he

3

alleges that his initial waiver of his right to counsel was based on the trial court's misrepresentation or misstatement of the law that he could, at any time, change his mind about self-representation. Thus, he claims, as a result of the erroneous instruction, his initial waiver of his right to counsel was not made knowingly and intelligently.

When Appellant told the trial court that he wanted to represent himself, the trial court admonished Appellant in accordance with *Faretta*. The trial court additionally told Appellant: "I mean, if you were to start to represent yourself you could say, well, this is going not like I thought it would. It's harder than I thought it would be. I want to change my mind and tell the Judge and let Mr. Sherrod start representing me." The trial court then asked Appellant: "You understand that?" The trial court also informed Appellant that his court-appointed trial counsel was going to stay in court with him, "[s]o that you can ask a question of him if you needed it, okay?" The trial court further told Appellant: "Now, listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay? Because you're going to be missing a lot of things." The trial court then reminded Appellant: "And you've never done a voir dire and you don't even know what to say to them." After the trial court made those comments, it told Appellant that it was allowing him to represent himself.

The State then proceeded with its voir dire of the jury panel. After the State had completed its voir dire, and after Appellant had questioned the jury panel about various things—some of which the trial court did not allow—Appellant attempted to ask the jury panel whether anyone had been involved in or knew someone who had been involved in a DWI case. The trial court told Appellant that he could not ask whether someone had a DWI because it was not relevant to the case. At that point, Appellant told the trial court that he wanted "to remove my motion to represent myself and ask for Mr. Sherrod's representation" and that he

4

wanted Sherrod to finish the voir dire. The State requested the trial court's permission to approach the bench. After an unreported bench conference, the trial court informed Appellant that he needed to finish the voir dire: "You elected to do this voir dire. I can't -- ordinarily, see, you don't get to go up there at all, your lawyer does that. But now you want to do both and I can't let you do both." The trial court then told Appellant: "So if you want -- you said you wanted to do the voir dire, so you go do your voir dire and after you finish that if you want Mr. Sherrod to take over, he can take over. But you need to finish the voir dire."

We do not have the benefit of a record of what transpired during the bench conference. The State contends that the trial court might have decided that Appellant was not entitled to hybrid representation during voir dire. The State argues that Appellant did not have an absolute right to hybrid representation and that whether the trial court erred when it denied Appellant hybrid representation should be reviewed for an abuse of discretion. *See Scarbrough v. State*, 777 S.W.2d 83, 92–93 (Tex. Crim. App. 1989) (although a defendant does not have an absolute right to hybrid representation, a trial court may permit hybrid representation in its discretion and should decide whether to permit it at the "earliest practicable moment").

Although we do not know what transpired at the bench, we do know that the trial court had previously correctly told Appellant, "Now listen, I told you you could change your mind. So be sure and tell me. Don't just sit there and suffer. It's not necessary. Okay?" We also know that, after the unreported bench conference requested by the State, the trial court would not allow Appellant to change his mind, mid voir dire, about self-representation. We can see from the exchange between the trial court and Appellant that the trial court indicated to Appellant that he could change his mind about self-representation, even during the voir dire examination of the jury panel. That was not an erroneous instruction.

5

Article 1.051(h) of the Texas Code of Criminal Procedure provides that "[a] defendant may withdraw a waiver of the right to counsel at any time but is not entitled to repeat a proceeding previously held or waived solely on the grounds of the subsequent appointment or retention of counsel." TEX. CODE CRIM. PROC. ANN. art. 1.051(h) (West Supp. 2014). Even in the absence of Article 1.051(h), courts have held that a defendant could rescind a waiver of his right to counsel or withdraw an assertion of his right to self-representation. *See, e.g., Funderburg,* 717 S.W.2d at 642. Accordingly, the trial court did not incorrectly advise Appellant that he could withdraw his waiver of counsel at any time, nor did the trial court incorrectly permit Appellant to have standby counsel. Appellant's claim that his waiver of counsel was not knowingly and intelligently made because of misstatements made by the trial court is overruled.

Appellant's complaint that his initial waiver of counsel and assertion of his right to self-representation was not made knowingly and intelligently does not stop there. He also argues that, "[b]y not allowing representation by counsel at this critical stage of the trial process in contravention of the Court's promise to Appellant, the Court denied Appellant the representation of counsel."

A defendant's right to self-representation cannot be used to obstruct the orderly procedure of the court. *Webb,* 533 S.W.2d at 784. Likewise, a defendant's withdrawal of that right cannot be used to obstruct the orderly procedure of the court. *Medley v. State,* 47 S.W.3d 17, 23–24 (Tex. App.—Amarillo 2000, pet. ref'd) (relying on *Marquez v. State,* 921 S.W.2d 217, 223 (Tex. Crim. App. 1996) (discussing withdrawal of jury waiver)).

In *Medley,* the Amarillo Court of Appeals addressed the question of the obstruction of the orderly procedure of the trial court as relative to an accused's withdrawal of his waiver of his right to counsel. *Id.* at 24. However, the *Medley* court specifically noted that, because the appellant in that case based his claim on a

6

violation of his Sixth Amendment right to counsel, it did not consider "how the statutory authorization for a defendant to withdraw a waiver of the right to counsel 'at any time' would affect the timing requirement of the request to revoke the waiver." *Id.* at 24 n.4 (citing CRIM. PROC. art. 1.051). The court wrote that, when a defendant seeks to reclaim a previously waived right to counsel, the record must "show a request to revoke the waiver sufficiently in advance of trial, such that granting the request will not: (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State." *Id.* at 24.

We are not called upon to decide whether the *Medley* factors apply to a request made under Article 1.051(h) because Appellant has not asserted that the trial court violated Article 1.051(h) in this case.[1] However, even if they do apply, this record shows that counsel had been appointed in advance of trial; was present at trial, including voir dire; participated in making juror strikes; began to serve as Appellant's counsel immediately after voir dire and did so for the remainder of the trial; and did not seek a continuance. Therefore, the record shows that the factors outlined in *Medley* were met, and that showing was unrebutted by the State. *See id.* We hold that, although it correctly advised Appellant upon the law, the trial court erred when it refused to allow appointed counsel to complete the defense portion of voir dire.

---

[1]We note that the Court of Criminal Appeals has recently granted the petition for discretionary review in a case in which the Fort Worth court of Appeals applied the *Medley* test to Article 1.051(h). *Lewis v. State*, No. 02-12-00246-CR, 2014 WL 491746, at *2–5 (Tex. App.—Fort Worth Feb. 6, 2014) (mem. op., not designated for publication), *pet. granted*, (Tex. Crim App. Sept. 17, 2014) (No. PD-0307-14). The Fort Worth court held that the defendant did not meet his burden to show that his request, made immediately before the jury panel was seated, would not interfere with the orderly administration of justice or delay the trial. *Id.* The court reviewed the denial of the defendant's request under an abuse of discretion standard. *Id.* The issue presented in the parties' briefs to the Court of Criminal Appeals is whether the proper standard of review on appeal was de novo or abuse of discretion. Regardless of which standard of review is proper, our result in this case would be the same.

7

We now proceed to determine the effect of that error and whether it is structural or whether it is subject to a harm analysis. Structural errors are those federal constitutional violations that "by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). In *Johnson v. United States*, the Supreme Court set forth a list of structural errors. *Johnson v. United States*, 520 U.S. 461, 468–69 (1997). The violation from that list that concerns us here is one that occurs from the *total* deprivation of counsel at trial. *Id.* If the deprivation of the right to counsel affected and contaminated the entire criminal proceeding, the error is not subject to a harm analysis. *Satterwhite*, 486 U.S. at 257.

A *complete* denial of counsel is a structural defect that affects the framework of the trial. *Williams v. State*, 252 S.W.3d 353, 357 (Tex. Crim. App. 2008). However, not every partial denial of counsel is structural error. *See Massingill v. State*, 8 S.W.3d 733, 737 (Tex. App.—Austin 1999, order) (concluding that the denial of counsel after the imposition of sentence and before the deadline for filing a motion for new trial was not structural error and was subject to a harmless error analysis), *disp. on merits*, 2000 WL 564168 (Tex. App.—Austin May 11, 2000, pet. ref'd); *see also Davis v. State*, 228 S.W.3d 917, 920 (Tex. App.—Waco 2007, order) (relying on *Massingill* and holding same), disp. on merits, 276 S.W.3d 491 (Tex. App.—Waco 2009, pet. ref'd).

We have not found a case in which a court specifically addresses whether the partial denial of counsel during voir dire is a structural error that is not subject to a harm analysis or is a constitutional error that is subject to a harm analysis. But in *Eason*, the Court of Criminal Appeals reversed the judgment and remanded the cause to the trial court without doing a harm analysis and without noting that the error was structural *when the defendant did not knowingly and intelligently waive*

8

*his right to counsel* and the voir dire examination was conducted in the absence of counsel. *Eason*, 563 S.W.2d at 947. However, later, in *Gobert*, a case where counsel was absent for a portion of voir dire, the Court of Criminal Appeals stated, "[W]e perceive no harm to appellant and find that he was not deprived of the assistance of counsel." *Gobert v. State*, 717 S.W.2d 21, 24 (Tex. Crim. App. 1986). The court noted that counsel was only absent for a short time at the beginning of voir dire and not during the entire voir dire as in *Eason*. *Id.* at 23. In a concurring opinion, Judge Teague stated that he would hold that the trial court denied the appellant his right to counsel during voir dire but that counsel's absence was harmless beyond a reasonable doubt. *Id.* at 26.

Here, Appellant was not totally deprived of his right to counsel during voir dire. Before Appellant sought to represent himself, the trial court had appointed counsel to represent Appellant. When Appellant insisted on representing himself, the trial court informed him that his previously appointed counsel would stay in the courtroom and serve as standby counsel. The trial court told Appellant that Sherrod was available "[s]o that you can ask a question of him if you needed it, okay?" Further, appointed counsel participated in making challenges to the jury panel members and fully represented Appellant for the remainder of the trial after voir dire. Because Appellant was not totally deprived of counsel during voir dire, we hold that the error was not a structural one but, rather, one subject to a harm analysis. Therefore, under the provisions of Rule 44.2(a) of the Texas Rules of Appellate Procedure, we will reverse for nonstructural constitutional error unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

During the State's voir dire, the prosecutor asked the panel whether anyone knew him. The prosecutor also addressed, among other things, the importance of giving Appellant a fair trial, whether anyone had undergone negative jury service

9

experiences, whether there were any matters that would divert their attention from jury service, and whether any of the panel members had been involved in murder cases. The prosecutor also inquired about prior encounters with law enforcement, and he also mentioned the State's burden of proof.

When the State completed its voir dire, Appellant then began his voir dire of the jury panel. He mentioned proof and credibility. He also presented the idea of how the jury panel could see an event occur but how each person could have a different viewpoint about what he or she saw. Appellant asked whether anyone on the panel had a problem with him wearing jail clothes; he had refused to change out of his jail clothes and was tried in those clothes. Appellant also asked the panel about their experiences as victims of crimes. He talked to the jury panel about judging people based on their physical features, about how investigations based on forensic and physical evidence were more credible than investigations based on confessions, about the right to defend one's self and defend one's house and property, about how people who are on drugs are capable of doing anything at any given time, and about believing what a police officer says just because he is a police officer. Appellant also covered several other topics. When Appellant asked whether anyone had been involved in or had to deal with a sexual assault case, the trial court called him to the bench and held a discussion with him. After that discussion, Appellant changed his question and asked whether anyone had been the victim of an assault or theft. Toward the end of his voir dire, Appellant asked about involvement in DWI cases. The trial court told Appellant that the question was not relevant. It was at this time that Appellant attempted to reclaim his right to counsel and allow Sherrod to finish the voir dire. As we have noted, the trial court denied Appellant's request.

Appellant argues that the denial of counsel was harmful because the voir dire was not thorough. In support of that argument, Appellant names a number of

topics that he did not cover during voir dire. Appellant's argument, at least in part, attacks his own representation and his own failure to cover certain topics. A defendant who elects to represent himself cannot thereafter complain that the quality of his representation amounted to the denial of effective assistance of counsel. *Williams v. State*, 549 S.W.2d 183, 189 (Tex. Crim. App. 1977). Further, whether the State's voir dire was beneficial to Appellant is an appropriate consideration in our harm analysis. *Saunders v. State*, 721 S.W.2d 359, 363–64 (Tex. App.—Tyler 1985, pet. ref'd). We have outlined some of the matters covered by the State in its voir dire. It is clear that Appellant benefitted from portions of the State's voir dire examination.

Under the record in this case, we determine beyond a reasonable doubt that any error connected with the trial court's refusal to allow appointed counsel to complete the voir dire examination did not contribute to Appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2(a). We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant claims that he received ineffective assistance from his appointed counsel. Despite his numerous allegations, Appellant has not shown that he received ineffective assistance of counsel.

The standard of review for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002). To prevail, Appellant must first show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 833. Specifically, an appellant must show "that his counsel's representation fell below the objective standard of professional norms." *Bone*, 77 S.W.3d at 833. "Second, [an] appellant must show that this deficient performance prejudiced his defense." *Id.* To do this, "the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been

11

different." *Id.* (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). "A 'reasonable probability' is one sufficient to undermine confidence in the outcome." *Id.* "It is not sufficient for [an appellant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 693). "Rather, [an appellant] must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). Thus, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). When determining the validity of an ineffective-assistance-of-counsel claim, judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

Appellant asserts that trial counsel was ineffective because he did not urge pretrial motions filed both by prior counsel and by Appellant; did not obtain adequate discovery, including the examination of cell phone records, the cell phone itself, and audio and video recordings of police dispatch calls; did not discuss the results of that discovery with Appellant and submit the same to an expert; failed to request a continuance to seek more time to prepare for trial; failed to keep

12

Appellant informed so that he could make informed decisions regarding his defense; failed to secure testimony of certain witnesses that Appellant believed were favorable to his defense; failed to locate and secure the attendance of certain witnesses; failed to personally interview witnesses rather than conduct interviews through an investigator; and failed to obtain an expert witness to testify regarding bullet trajectory.

Appellant presented his claims to the trial court through a motion for new trial. Appellant's trial counsel testified at the hearing on the motion. He told the trial court that he had complete access to the State's file, including cell phone information, and therefore did not need a continuance or further discovery in order to prepare for trial. Trial counsel also explained that the investigator interviewed the witnesses that had been suggested by Appellant but that those interviews revealed that the witnesses' testimony would not be beneficial to Appellant's defense. Counsel testified that the bullet trajectory possibility that had been suggested by Appellant—that Sanchez shot McCain from the street—was investigated but that the theory did not match any of the other evidence, including the autopsy report. Trial counsel also testified that he went over the case with Appellant many times.

In his testimony at the hearing, Appellant disputed trial counsel's testimony. At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Parson v. State*, 392 S.W.3d 809, 820 (Tex. App.—Eastland 2012, pet. ref'd). Furthermore, Appellant's testimony did not show that the witnesses were available and that they would have testified in his favor. *See Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010). The witnesses did not testify at the hearing on the motion for new trial, and Appellant did not attach any affidavit to his motion for new trial.

13

Under this record, we hold that Appellant has failed to show that his counsel's representation fell below the objective standard of professional norms. Therefore, he has failed to meet the first prong of *Strickland*. We need not address the second part of that standard. We overrule Appellant's second issue on appeal.

In his third issue, Appellant claims that the trial court erred when it forced him to appear in a jail-issued orange jumpsuit. That action, he claims, resulted in the denial of his right to a fair trial and his right to be presumed innocent. When a trial court forces a defendant to appear at trial in jail clothes, it might thereby impinge upon the presumption of innocence afforded to an accused. *Lantrip v. State*, 336 S.W.3d 343, 351 (Tex. App.—Texarkana 2011, no pet.). A defendant who protests must timely object. *Id.* Here, not only did Appellant fail to object, he also, numerous times, told the trial court that he was not going to change. Appellant also asked the jury panel during voir dire about him wearing the orange jumpsuit. At one of the times that the trial court told Appellant that he could change clothes, Appellant told the trial court that it was not going to be a fair trial anyway and that the Department of Justice and the board of judicial conduct already were looking into his trial, and he continued to refuse to change clothes. Appellant was free to make the decision to be tried in jail clothes. *Id.* Therefore, because Appellant did not timely object to being tried in jail clothes but, rather, did so by his own choice, we overrule his third issue on appeal.

We affirm the judgment of the trial court.

April 9, 2015                                  JIM R. WRIGHT
Publish. *See* TEX. R. APP. P. 47.2(b).        CHIEF JUSTICE
Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14

Print this page

# Case # PD-0552-15

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 06/10/2015 06:10:03 PM |
| Case Number | PD-0552-15 |
| Case Description | |
| Assigned to Judge | |
| Attorney | |
| Firm Name | Paul W. Hanneman |
| Filed By | Paul Hanneman |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | BOA 2570 |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 9237947 |
| Order # | 005630082-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | |
| Reference Number | |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 06/11/2015 04:21:09 | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for |

PM                  discretionary review.

## Documents

| | | |
|---|---|---|
| *Lead Document* | FIRST MOTION FOR PETITION FOR DESCRETIONARY REVIEW signed.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Paul W. Hanneman pwhlawoffice@gmail.com | | EServe | Sent | Yes | Not Opened |